FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

00 APR 19 PM 3:38

U.S. DISTRICT COURT
N.D. OF ALABAMA

In Re: Carolyn M. Nunley, Debtor.　　　　　)

CHASE AUTOMOTIVE FINANCE　　　　　)
CORP.,

　　　　　　　　　　　　　　　　　　　)

　　　　　　　　Appellant,　　　　　　　　　)　　CIVIL ACTION CV 99-J-3166-NE

　　　　　　　　　　　　　　　　　　　)

vs.

　　　　　　　　　　　　　　　　　　　)

CAROLYN M. NUNLEY,　　　　　　　　　　ENTERED

　　　　　　　　Appellee.　　　　　　　　　APR 1 9 2000

## MEMORANDUM OPINION

This is an appeal from the order of contempt entered by the Bankruptcy Court

against appellant Chase Automotive Finance Corp. ("Chase") on October 25, 1999 (R.

15).[1]  Pursuant to 28 U.S.C. § 158(a), this Court exercises jurisdiction over the appeal.

The issues on appeal are whether Chase's conduct constitutes a willful violation of the

automatic stay, and if so, whether the award accompanying this holding constitutes an

abuse of discretion by the Bankruptcy Judge.

---

[1] Citations to the record are as follows: information contained within the transcript of the
hearing held on October 25, 1999 is cited as TR-page # - line(s) #.  Pleadings, briefs and orders
to the Bankruptcy Court are cited as (R. ) and pleadings, briefs and orders from this Court are
cited as (doc. ).

## Factual Summary

On August 29, 1995, appellant Chase entered into a retail installment contract with Robert and Sandra Christy, individuals who are not parties to this action. Affidavit of Kathy Capo at ¶ 3. The Christy's had purchased a 1995 Pontiac Sunfire, VIN # 1G2JB1249S7538926. Motion to Reconsider Judgment Awarding Damages ("2nd Motion to Reconsider") at 1. Through a retail installment contract, the SunFire was financed by Chase. The purchase of this automobile was for the benefit of appellee Carolyn M. Nunley, who for reasons irrelevant to the issue at bar, could not obtain financing on her own.

With Robert and Sandra Christy's consent, Ms. Nunley obtained possession of the automobile and exclusively kept the same at all times, making all of the payments on the note executed by Robert and Sandra Christy directly to Chase. There is evidence Ms. Nunley has been in exclusive possession of the automobile for at least the last two years. *See* TR 19. On May 21, 1999 Ms. Nunley filed a debtor proceeding under Chapter 13 of the Bankruptcy Code. Complaint at ¶ 3. In her petition, Ms. Nunley listed Chase as one of her creditors[2] and listed the automobile as an asset in her estate with the bankruptcy

---

[2] Chase does not dispute that they were notified that they had been listed as a creditor of Ms. Nunley's estate. Additionally, given the fact that the car was repossessed directly from Ms. Nunley, that Ms. Nunley made payments on the loan directly to Chase for several years, and that Ms. Nunley was in contact with Chase on various occasions regarding the car, the Court finds Chase had notice that Ms. Nunley was in possession of the vehicle. *See* Complaint Seeking Turnover of Property at ¶ 4.

court. Despite the fact Ms. Nunley ("Debtor") had listed Chase as one of her creditors in her petition, thereby affording her protection from Chase through the automatic stay provisions of the Bankruptcy Code and despite the fact that Chase received notice[3] that the stay was instituted, Chase repossessed the automobile from Debtor on July 5, 1999 due to default in monthly payments. The next day, counsel for Debtor contacted Chase seeking the return of the vehicle.

On July 13, 1999, after unsuccessful attempts by counsel for Debtor to resolve the issue outside of court, Debtor filed a Complaint Seeking Turnover of Property, demanding the return of her automobile. The Complaint did not list the VIN number of the automobile but did include reference to the Christys (*see* Complaint Seeking Turnover, R. 1). A motion to shorten the time in which Chase had to respond was filed

---

[3] Nowhere in the record does Chase dispute receipt of notice of the automatic stay which was in force from May 21, 1999 (R. 28). Chase insists the notice was ineffective because they had no record of Debtor in their files. Additionally, after its First Motion to Reconsider, counsel for Chase continually complained of not receiving notice of hearings and/or pleadings in a timely fashion. The Court notes however, that Chase has no registered agent in Alabama to receive service. In so noting, the Court does not in any way intimate that the absence of a registered agent diminishes a corporation's due process rights. However, the Court finds that a corporation involved in assumably voluminous amounts of loan agreements throughout the country should recognize and appreciate the need for a registered agent to accept service of process and/or for the implementation of a more efficient process at their principal place of business to assure the prompt attention to legal matters, especially in light of the sworn testimony of Kathy Capo, an employee for Chase, wherein Ms. Capo admitted that though employees of Chase received verbal notice of the complaint for turnover on July 6, 1999, and the actual notice of the complaint for turnover on July 15, 1999, a copy of the complaint for turnover was not forwarded to its attorneys until July 27, 1999. *See* Affidavit of Kathy Capo at ¶¶ 5, 8, 13. Finally, the Court notes Chase's continuous reference to alleged "improper service" of the pleadings. However, Chase has failed to put forth any evidence the pleadings were served improperly other than the fact, as discussed above, that Chase alleged receiving them with only a short time to respond.

contemporaneously with the Complaint Seeking Turnover (Motion to Shorten Time, R. 2). This motion was granted by the Bankruptcy Judge on July 14, 1999 (R. 3).

A hearing was held on July 26, 1999, pursuant to the order of July 14, 1999 (*See* Order for Hearing on Complaint for Turnover of Property at R. 2). Counsel for Chase did not appear.[4] Appellant's Brief at 5. After the hearing, the Court issued an order dated August 6, 1999 compelling Chase to turnover the automobile (R. 5). In addition to turnover, Chase was instructed to pay $534.00 in actual damages and $75.00 per day for each day the automobile was not returned to the debtor (R. 5). Finally, the Court included in its order the possibility for revisiting and amending its sanctions award in the event Chase failed to comply with the order.

A review of the court's docket clearly records the date of entry of the order as August 6, 1999. Chase maintains in its brief that it did not receive actual notice of the order until August 25, 1999, despite diligent investigation of the docket.[5] *See* Brief of

---

[4] Chase maintains it was not properly served. In support of its contention, Chase claims the certificates of service provided by counsel for the debtor were illegible as to date of service. Brief of the Appellant. Nonetheless, Chase appears to concede a copy was mailed on July 16, 1999, leaving them eight days to respond. *See Id.* However, in the First Motion to Reconsider, R. 6, Chase states it chose not to respond to the Complaint and/or appear at the hearing because it was not provided enough information on the face of the complaint to determine the debtor's identity. *See* First Motion to Reconsider at ¶ 6. At the hearing on November 8, 1999 the Bankruptcy Judge specifically found Chase had notice of the filing, noting Chase raised the allegation of ineffective notice for the first time in its Motion to Reconsider Order for Turnover. Having voluntarily failed to appear at the hearing on the complaint, this Court finds that Chase waived any objections to the service it received.

[5] The Court notes the inconsistency between Chase's brief and testimony of its attorney at the hearing before the Bankruptcy Court. At the hearing, Chase's counsel conceded that the

4

Appellant at 9 (21), ¶ 17.  Affidavit of Margaret Noone at ¶¶ 1, 6, 7;  Motion to

Reconsider Judgment Awarding Damages ("First Motion to Reconsider") Exh. C

("Noone Affidavit").  Regardless of when Chase claims to have received the order, Chase

acknowledges that counsel for the Debtor contacted Chase the very same day of the

hearing to inform Chase that judgment was going to be entered in favor of Debtor,

compelling the turnover of the automobile.  Brief of the Appellant at 13.  *See* Affidavit of

Kathy Capo at ¶ 9; First Motion to Reconsider, Exh. A.  Furthermore, on July 26, 1999,

counsel for Chase was instructed to prepare a Motion to Reconsider the Judgment.

Affidavit of Kathy Capo at ¶ 12.

On August 20, 1999, Chase filed an untimely motion to reconsider (R. 6); this

motion was denied without hearing on August 23, 1999 (R. 7).  In support of its motion,

Chase argued the Complaint for Turnover did not provide sufficient information which

would have allowed Chase to match the bankruptcy information with the retail

installment agreement.  *See* Motion to Reconsider at ¶ 7.  Chase received notice that its

motion for reconsideration was denied on August 27, 1999.  Noone Affidavit at ¶ 12.  The

Court, in denying the motion, stated "[t]he defendant's conscious decision not to respond

to the complaint was at it's peril" (R. 7).

In its brief, Chase again argues it did not have enough information on the face of

_____

Order directing turnover of the automobile was entered into the docket on August 6, 1999.  TR
10.

the complaint to match the complaint to the note on which the car was repossessed.  Brief

of Appellant at 7, ¶ 6; First Motion to Reconsider at ¶ 7.   The Bankruptcy Court

disagreed, finding the communication with the debtor and her attorney and the reference

to the Christys was sufficient to put Chase on notice of the Chapter 13 proceeding.

Notably, the Court also considered the fact that these issues could have been discussed

and resolved had Chase sent counsel to be present at the initial hearing on the Complaint

for Turnover rather than ignoring the complaint (R. 6).   Interestingly, Chase now argues

the entire issue could have been avoided had Debtor's counsel contacted them regarding

the subject automobile.[6]

Two weeks after receipt of the denial to reconsider, on September 7, 1999, Chase

returned the automobile to the debtor.  Capo Affidavit at ¶ 18.   The automobile was

returned in poor condition, with scratches and dents on the surface of the car and the

trunk appearing to have been pried open with a crowbar.  *See* Findings of Fact ("FOF") at

¶¶ 25-27.

On September 10, 1999, three days after the return of the car, debtor filed a motion

to hold Chase in contempt and a request for costs, fees, and damages resulting from

Chase's failure to turnover the automobile as of August 6, 1999 (R. 8).  While Chase had

returned the automobile to the debtor, three days prior to the filing of the Debtor's motion

---

[6] *See supra,* pp. 3, 5 (Debtor's attorney contacted Chase on several occasions before and after the filing of the complaint for turnover seeking the return of the automobile).

and an astounding sixty-five days after it violated the automatic stay by repossessing the property of the bankruptcy estate, the damages previously imposed against Chase had not been paid.  Chase objected to the Debtor's motion and moved for contempt against the Debtor (R. 10).  Upon receipt of Chase's objection, a hearing on the motion was held on October 25, 1999.  Appellant's Brief at 10.  In the order setting the hearing, each party was instructed to file a brief on the issue of whether Chase's motion to reconsider the turnover order automatically suspended per diem damages or if Chase should have requested a stay of that order.  R. 11.  Chase once again ignored the Bankruptcy Court's order and did not file a brief.

All parties to the action were represented by counsel at this hearing, though Chase offered neither testimony nor argument.  After the testimony of both Debtor and her counsel, the Bankruptcy Judge entered into the record his findings of fact[7] and issued an order of contempt.  In its order, the Bankruptcy Court canceled the debt from the debtor to Chase and ordered $30,000 in punitive damages be paid to Ms. Nunley, $5,000 of which was ear-marked as attorney's fees (TR 35).

The Bankruptcy Judge, in handing down his order, made the following findings:

---

[7] Chase, arguing that a *de novo* standard of review is applicable to the case at bar, asserts that the Bankruptcy Court failed to issue findings of fact and conclusions of law.  *See* Standard of Review, *infra*.  A review of the record, however, clearly indicates such findings were made.  At the hearing on the motion for contempt, the judge specifically stated "the Court is going to make a finding here" (TR 27-25).  Additionally, the court incorporated these findings by reference in its written order of contempt entered in the docket that same day (R.15).

These facts constituted a flagrant case of abuse by this
creditor (TR-28-1); That Debtor filed for Chapter 13
protection on May 21, 1999 and that Chase Automotive was a
duly listed creditor (TR-28-6, 7); That the vehicle at issue was
Debtor's only vehicle and that she was going to pay for it
through her Chapter 13 plan (TR-28-11, 12);
That Chase Automotive repossessed the vehicle on July 5,
1999 (TR-28-16,17); That Debtor's Chapter 13 plan was
confirmed on June 29, 1999 (TR-28-24, 25); On July 12,
1999, Debtor filed an adversary proceeding requesting return
of the car (TR-29-7); The complaint stated this was the sole
means of transportation for the debtor, it's return essential to
her livelihood and well-being (TR-29-11, 12);  Upon
consideration of the complaint and request of Debtor's
counsel, the Bankruptcy Judge granted motion for expedited
hearing (TR-29-13);  Defendant does not contest notice of the
proceeding or the setting of the hearing (TR-29-16, 17); On
August 6, 1999, the Court entered an order requiring the car
be turned over to the debtor, an allowance of $75/day in
damages for each day the car was not returned (TR-29- 18,
19, 20); Rather than comply with the order, Chase
Automotive filed an untimely motion for reconsideration
(TR-30-1, 2); In Debtor's motion for reconsideration, Chase
did not deny receipt of the complaint; rather, Chase chose not
to respond to the complaint because they did not have a
customer in the name of Carolyn Nunley (TR-30-10, 11, 12);
In considering the motion for reconsideration, the Court
reviewed the complaint and determined Chase would have
been able to ascertain the account had it read the complaint
(TR-30-12, 13,17, 18, 19); The Complaint stated the original
purchaser was Robert Christie[sic] (TR-30-25), Plaintiff
drove the car, made payments on the car directly to Chase
Automotive, her payments were accepted by Chase and that
she had discussed the car with Chase (TR-31-1, 2, 3, 4);
Evidence put forth at the trial and in the complaint would
have apprized Chase Automotive but Chase Automotive
chose to ignore the complaint (TR-31-6, 7, 8); After
having time to "digest and absorb" who the customer was and
what their relationship to the customer was, they chose to

8

ignore this Court's order of August 6th requiring them to give
the car back (TR-31-11, 12, 13); The car was not returned
until September 7th (TR-31-15); Chase repossessed the car of
a person lawfully in bankruptcy in violation of the automatic
stay (TR-31-17, 18); Chase had reason at that time to know
the true and correct situation as to whose car it was and what
was being done (TR-31-20, 21);Chase disregarded the law
(TR-31-23); The Court issued its order of August 6th (TR-32-
5);  The order, in addition to requiring $75/day, further
required Chase to pay a total of $534, which covers $435
rental and $15 monies charged for plaintiff/debtor to get items
that were left in the vehicle from recovery, and $84 for missed
time at work (TR-32-6, 7, 8, 9); The Court retained
jurisdiction over the matter (TR-32-10); The Court entitled
Debtor leave to continue forward with this complaint to show
further damages if the judgment was not complied with
immediately (TR 32-13, 14, 16); The car was returned on
November 7th, extensively damaged (TR-32-19, 20);[8] The
trunk to the car had been pried open, popped open, the doors
had marks in them that looked like crowbars had been used to
pry them open (TR-32-23, 24, 25); The windows of the car
were scratched, there were dents and bumps all over it (TR-
33-1); Plaintiff/debtor suffered humiliation by having the car
snatched from her and embarrass and humiliate her in front of
her children, in front of her people at work and her friends
(TR-33- 8, 9, 10); Plaintiff/debtor had to borrow cars to get
around (TR-33-10); The Court finds this is an appropriate
case for sanctions (TR-33-14); The actual damages were set
forth in the complaint (TR-34-1), and already ordered (TR-
34-3); The $75/day charge ran from July 26th to September 7th
(TR-34-7); Total damages calculated on the $75/day charge is
$3073.00 (TR-34-20); Chase Automotive has shown a
flagrant attitude (TR-34-25); Chase's attitude is one that it is
above the law, above and beyond the law (TR-35-1); Chase
was totally in disregard of Ms. Nunley's rights (TR-35-2);Ms.

---

[8] The Court notes this date, as recited by the Bankruptcy Judge, is incorrect.  Based on the
record and the Judge's reference to the return of the automobile correctly as September 7th, this
Court is of the opinion that the Judge misspoke in this instance.

> Nunley was using the bankruptcy law as it was intended to be
> used (TR-35-5); The Court cancels the debt from the debtor to
> Chase (TR-35-9); The Court awarded punitive damages
> against Chase in favor of Ms. Nunley for $25,000 (TR-35-15,
> 16); The Court awarded another $5,000 to Ms. Nunley
> earmarked for attorney's fees (TR-36-6, 7)."

After the Order of Contempt was entered but during a time in which Chase "did

not comprehend [] the severity of the Sanctions Award," *see* Brief of Appellant at 6,

Chase filed a timely motion to reconsider the order (R. 16). The motion was summarily

denied (R. 17). This appeal followed.

## Standard of Review

Appellant urges this Court to review the award of sanctions imposed upon it *de*

*novo*, as it believes the proceeding through which sanctions were awarded was a non-core

proceeding.[9]  From  review of the record below and the Bankruptcy Rules however, this

---

[9] Additionally, Chase contends that it should be entitled to *de novo* review because of the
Bankruptcy Court's purported failure to file findings of fact and conclusions of law. Brief of
Appellant at 4.  In support of this contention, Chase offers Fed.R.Bankr.P. 9020(c), the procedure
under which non-core proceedings are to be reviewed. *Id.* at 3. Chase concedes that it did not
follow the procedure under Fed.R.Bankr.P. 9020(c) was not followed, but then incredulously
argues the blame lies with the Bankruptcy Court for failure to follow the procedure, stating the
court never issued findings of fact. *Id.* at 4.  Even if the Court were to find the imposition of
sanctions fell outside the scope of a core proceeding, thereby relegating this review to the
procedures set out in Fed.R.Bankr.P. 9020(c), the Court finds that the Bankruptcy Court clearly
set out the findings of fact and conclusions of law twice in the record, once during the hearing on
the motion to find Chase in contempt and again by reference in the order finding Chase in
contempt. Furthermore, Chase did not object to any of these findings and conclusions. Rule
9033(b) of the Federal Rules of Bankruptcy Procedure requires a party to object to specific
findings of fact and conclusions of law and state the grounds for such objection. Fed.R.Bankr.P.

Court finds that the sanctions were awarded as part of the underlying proceeding, a turnover action.  Turnover actions are, by statute, core proceedings.  *See* 28 U.S.C. § 157(b)(2)(E).

A district court functioning as an appellate court reviews conclusions of law in core proceedings under the *de novo* standard of review; findings of fact will not be disturbed by the reviewing court unless such findings were made in clear error.  *In Re Reider,* 31 F.3d 1102, 1104 (11th Cir. 1994); *see also In Re JLJ, Inc.,* 988 F.2d 1112, 1116 (11th Cir. 1994).  Under clear error, a significantly deferential standard, the appellate court is required to accept lower court's findings of fact unless, upon review, the appellate court is left with a definite and firm conviction that a mistake has been committed. Fed.R.Bankr.P. 8013.  If the lower court's account of evidence is plausible in light of record viewed in its entirety, the appellate court may not reverse, even though it is convinced that, had it been sitting as trier of fact, it would have weighed evidence differently.  *Id.*

## **Legal Analysis**

Ms. Nunley sought a turnover of her automobile under 11 U.S.C. § 542.  Creditors, pursuant to § 542, are directed to deliver the property of the bankruptcy estate in their

---

9033(b).  Chase's failure to comply with this procedure, had the proceeding been a non-core proceeding, bars raising these issues for the first time on appeal. *See In re Stacy,* 167 B.R. 243, 246-247 (N.D. Ala. 1994)(internal citations omitted).

possession to the trustee.  11 U.S.C. § 542.  After the Bankruptcy Court's order was

ignored by Chase, Ms. Nunley moved for sanctions pursuant to § 362(h), for a willful

violation of the automatic stay.  Ms. Nunley's motion was granted and sanctions were

awarded against Chase.  Chase now appeals from this order.

*I. Does the automobile at issue constitute property of the estate?*

The threshold issue before the Court is whether the subject automobile in this case

constitutes property of the estate.[10]  Unless this Court finds that the bankruptcy estate

does not include this automobile, the order of turnover was correct as the automatic stay

provision was violated and therefore the subsequent holdings of the Bankruptcy Court are

due to be affirmed.

Chase did not raise the issue of whether the automobile constituted property of the

estate until after the Judge entered his order.  *See* Chase's Motion to Reconsider Order for

Turnover of Property at ¶ 17.  Instead, Chase's argument focused on the allegation it had

---

[10] The Court notes Chase raised the issue of whether the automobile was property of the estate for the first time in its Motion to Reconsider the Order of Turnover (R. 6 at ¶ 16).  In its reply brief, Chase seems to concede that the automobile constituted part of the estate, instead arguing that the Bankruptcy Court never declared the automobile property of the estate and therefore Chase did not violate the automatic stay.  Chase's Reply at 6, 7.  Chase does, however, admit that the order for turnover of the property suggests a determination that the automobile was part of the estate.  Reply at 7.  According to Chase, assuming the order for turnover is a sufficient declaration that the vehicle is part of the estate, Chase did not have notice the automobile constituted part of the estate and that it was in violation of the automatic stay until August 25, 1999.  *Id.*  The Bankruptcy Court however, found this assertion to be not credible.  For the reasons set out below, this Court agrees.

insufficient information to match the Debtor's name to the retail installment contract.  In

fact, although Chase repossessed the automobile from the Debtor on July 5, 1999, it did

not even question Debtor's possessory interest in the automobile until after the

Bankruptcy Court imposed sanctions against it on August 6, 1999.  Chase's failure to

argue whether the automobile constituted part of the estate at the hearing on the turnover

complaint bars it from raising the issue after the decision to compel turnover of the

automobile was reached.

In addition to Chase's failure to raise this issue at the hearing on the Complaint for

Turnover, this Court finds Chase's acceptance of personal checks from the Debtor in

payment for the loan for several years, the fact Chase discussed the automobile and the

retail installment contract with Debtor, and the fact Chase repossessed the automobile

while in Debtor's possession, equitably estops Chase from contesting Debtor's interest in

the automobile on appeal.


*II. Was there a violation of the automatic stay?*

Agreeing that the automobile at issue in this case constitutes property of the estate,

the Court turns now to the application of the automatic stay.  Under 11 U.S.C. §

362(a)(3), a stay is imposed against any act to exercise control over property of the estate.

11 U.S.C. § 362(a)(3).  This stay becomes effective as soon as the bankruptcy petition is

filed, *In re Jove Engineering Co. v. Internal Revenue Service,* 92 F.3d 1539, 1546 (11th

Cir. 1996), operating to prohibit the commencement or continuation of almost all actions

by an entity against the debtor or the property of the debtor's estate. *See* 11 U.S.C. §

362(a); *see also* S.Rep. No. 989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. &

Admin.News 1978, p. 5787.

Actual notice of the filing of the petition is not required to impute liability on the

creditor who begins or continues an act to exercise control over the estate's property. *See*

*Carter v. Van Buskirk (In the Matter of Carter),* 16 B.R. 481, 483 (Bankr. W.D. Mo.

1981)(*citing Mueller v. Nugent,* 184 U.S. 1, 14, 22 S.Ct. 269, 274, 46 L.Ed. 405 (1902)

(filing of petition operates as notice to the world; accordingly, effectiveness of stay does

not hinge upon actual notice).  In addition, notice of the filing of a petition need not be a

formal notice of the commencement of a case where the creditor has sufficient facts

which would cause a reasonably prudent person to make further inquiry. *In Re Bragg,* 56

B.R. 46, 49 (Bankr. M.D. Ala. 1985).  It is therefore incumbent upon the creditor to verify

the status of a case prior to commencing an action in violation of the automatic stay when

facts indicate that the existence of a case may be likely. *Clayton v. King (In Re Clayton),*

235 B.R. 801, 808 (M.D. NC 1998).

In the case at bar, the Bankruptcy Court found that the automatic stay provision

was in place at the time Chase repossessed the automobile and that Chase had notice of

the Debtor's filing Chapter 13.  Chase does not contest this; rather, Chase maintains they

did not have a customer in the name of the Debtor and therefore disregarded the notice of

14

filing Chapter 13.   The Bankruptcy Court disagreed.   Notwithstanding the fact the fact

the Chapter 13 filing was not in the name of the person who signed the retail installment

contract, it is uncontested that Chase communicated with Debtor's attorney the day the

automobile was repossessed.   Chase received further evidence linking the contract and the

Debtor when Debtor filed the complaint for turnover.   At this point, at the very latest,

Chase most certainly had sufficient facts to cause them to make further inquiry.

Chase can not argue it did not violate the automatic stay because it did not have

notice the automatic stay extended to the automobile when it was willfully blind of this

fact.   Accordingly, this Court AFFIRMS the Bankruptcy Court's finding that Chase had

sufficient notice of the stay and that the stay extended to the automobile as property of the

estate.

## III. Was this violation willful?

In *Jove*, the 11th Circuit  adopted a two-pronged test to determine willfulness in

violating the automatic stay provision of § 362.   Under this test the court will find Chase

in contempt if it: "(1) knew that the automatic stay was invoked and (2) intended the

actions which violated the stay."   *Hardy v. United States (In Re Hardy)*, 97 F.3d 1384,

1390 (11th Cir. 1996)(*citing Jove*, 92 F.3d at 1555).   The finding of willfulness on the part

of the creditor is a factual issue to be decided by the Bankruptcy Court.   *See United States*

*v. Lile (In re Lile)*, 161 B.R. 788, 792 (S.D. Tex. 1993).   Accordingly, this Court may not

15

disturb the Bankruptcy Court's finding absent a firm and definite conviction that a mistake has been committed.

In the proceedings below, the Bankruptcy Court found the creditor knew of the automatic stay and intentionally took actions in violation of such stay. Debtor listed Chase as one of her creditors upon the filing of her bankruptcy petition. Chase does not contest this fact. Rather, Chase argues that because Debtor was not listed in their records, they could not match the petition to the automobile.[11]   In any event, the record before the Court indicated that counsel for Debtor contacted Chase the day the automobile was repossessed and informed it the car was part of the bankruptcy estate and accordingly under the protection of the automatic stay. At that point, Chase was obligated to return the automobile even if it was lawfully taken and seek redress *through the courts* in order to protect its interest in the collateral. *In Re Berscheit,* 223 B.R. 579, 581 (Bankr. Wy. 1998). Chase could have sought an immediate lift of the stay as to the automobile but instead chose to ignore the filing of the petition and notice from the Debtor's attorney. Chase's decision to ignore the sanctity of the automatic stay was at it's own peril.

Chase's willful behavior is further evidenced by the fact that, despite notification

---

[11] This Court finds it curious that Chase had insufficient information to prevent an unlawful repossession but sufficient information to find the car in order to accomplish the unlawful repossession. If Chase did not have enough information to relate Debtor to the car when it received notice of the filing of Chapter 13 protection, then how did it know where to find the car when it decided the car should be repossessed as a consequence of default?

of the Chapter 13 filing and contact with Debtor's attorney wherein conversations regarding the automobile and its repossession in violation of the automatic stay were had, Chase refused to return the automobile, even after the Complaint Seeking Turnover was filed. Chase may well have contested whether the automatic stay *should* apply to the automobile, but it wholly failed to raise this issue at any time. Chase's failure to contest the scope of the automatic stay left the automobile within the parameters of the bankruptcy estate. Therefore, Chases' actions were in violation of the automobile stay. This Court finds that Chase knowingly and intentionally disregarded the stay, which supports the Bankruptcy Court's finding this violation was willful.

Finally, Chase's failure to return the automobile after turnover was ordered further evidences an intent to violate the automatic stay. Chase, by continuing to possess the automobile after the Bankruptcy Court's order but during the time it attempted to persuade the Bankruptcy Court to reconsider its decision intentionally violated both the automatic stay and the Bankruptcy Court's order to immediately return the vehicle.

Based on the foregoing, there can be no dispute that the actions of Chase were intentional and with the knowledge that the property was protected by the automatic stay. Consequently, this Court finds substantial evidence supporting the Bankruptcy Court's ruling that Chase's actions constituted a willful violation of the automatic stay and therefore was not clearly erroneous. Accordingly, the Court AFFIRMS the Bankruptcy Court's finding of willfulness on the part of Chase.

17

*IV. Were the sanctions awarded in this case appropriate?*

Chase appeals to this Court novelly arguing that the sanctions were awarded by the Bankruptcy Court pursuant to 11 U.S.C. § 105. While the Bankruptcy Court's order does not itself specify, the record does supports this Court's finding that the sanctions were imposed pursuant to § 362(h). The entire proceeding grew out of a complaint for turnover. The complaint for turnover arose from Chase's decision to willfully violate the automatic stay. This Court, though cognizant sanctions in some form could have been sought under either § 105 or § 362(h) of the Bankruptcy Code, is of the opinion that the record most clearly supports a finding that the sanctions imposed by the Bankruptcy Court were imposed pursuant to § 362(h).[12]

The record below makes continuous reference to the award of sanctions for a violation of the automatic stay. In fact, in support of it's Motion to Reconsider the Damage Award, Chase provides a comparative analysis of the damage award handed down in this case to damages awarded in other cases involving violations of the automatic stay. In its analysis, Chase refers to the standard under which punitive damages pursuant to § 362(h) are awarded, arguing its actions failed to rise to the level required under § 362

---

[12] The Court notes several cases finding a creditor in willful violation of the stay that speak in terms of contempt while analyzing the claim under § 362(h). *See* Lundin, Keith M., *Chapter 13 Bankruptcy* § 3.104 (2nd Ed. 1994).

18

(h).[13]  Motion to Reconsider Award of Damages at ¶ 28.  It was not until the appeal that

Chase decided this proceeding was actually a contempt proceeding and that punitive

damages were not allowed.  The fact that Chase itself considered this award to have been

made pursuant to § 362(h) up to the point of this appeal, belies its present assertion that

this award was made pursuant to the Bankruptcy Court's powers of contempt under §

105.

Additionally, the record of the proceedings below contains references to the award

as a sanction by the Bankruptcy Judge.  Upon holding that Chase repossessed the

automobile of a person lawfully in bankruptcy in violation of the automatic stay (TR 31),

the Bankruptcy Court found that this was an appropriate case for sanctions.  (TR 33).

Reviewing the record as a whole, and in light of the fact both Chase and the Bankruptcy

Judge refer to the award as sanctions and that the award was made in light of the

egregiousness of Chase's actions, this Court is of the opinion that although the record

does not specifically state, that this award was made pursuant to § 362(h).

Having decided sanctions were awarded to the Debtor pursuant to 11 U.S.C. §

362(h), the Court turns now to the appropriateness of such an award.  Under § 362(h), "an

individual injured by any willful violation of a stay by this section shall recover actual

damages, including costs and attorneys' fees, and, in appropriate circumstances, may

---

[13] The Court notes the case to which Chase refers in making this analysis is *In Re Cox,* 214 B.R. 635 (N.D. Ala. 1997), a case dealing specifically with the appropriateness of sanctions awarded pursuant to § 362(h).

recover punitive damages." 11 U.S.C. § 362(h).  Once willfulness on the part of the

creditor has been established, the mandatory nature of this provision as it applies to actual

damages, costs and attorneys' fees, takes the award of actual damages out of the purview

of this Court's review.  Accordingly, the Court is left with the remaining issue of whether,

in view of the circumstances in their entirety, the award of $25,000 in punitive damages

was appropriate.

"Appropriate circumstances" has been defined as situations where the creditor

acted egregiously, vindictively, maliciously, or in bad faith.  *In Re Cox,* 214 B.R. 635,

645 (Bankr. N.D. Ala. 1997).  In reviewing the amount of punitive damages assessed

against Chase by the Bankruptcy Court, this Court is mindful of the fact Chase acted with

total disregard of the duty owed to both the Bankruptcy Court and the debtor.  Chase's

decision to ignore the proceedings before the Bankruptcy Court, it's flippant attitude

toward the Court and Debtor as evidenced by it's refusal to take even minimal

responsibility for it's actions, and it's complete disregard for the law has placed Chase in

a position where punitive damages are available to insure that this egregious behavior

never again occurs.  The automatic stay protections operate at the core of the Bankruptcy

Code.  The sanctity and respect due the automatic stay can not be overstated; any

deviation from the steadfast application of this provision would undermine both the

purpose and the procedure of bankruptcy.

This Court having reviewed the record of the proceedings below finds the

Bankruptcy Court's imposition of sanctions was not clearly erroneous. The record

supports the Judge's finding that this was a flagrant case of abuse by Chase (TR 28).

Based on the testimony given at the hearing, the Bankruptcy Judge found that the

automobile was debtor's only vehicle and essential to her livelihood and well-being (TR

29); that Chase did not dispute notice of the complaint or the setting of the hearing on the

complaint but chose not to respond (TR 30); that Chase's decision not to respond,

because they did not have a customer in the name of the debtor (TR 30), was both

irrelevant and not credible as Chase would have been able to ascertain the account had it

read the complaint (TR 30).

The Bankruptcy Court further found that Chase repossessed the car of a person

lawfully in bankruptcy in violation of the automatic stay (TR 31), using the bankruptcy

law as it was intended to be used (TR 35), and kept the vehicle until September 7th (TR

31) and that when the vehicle was returned, it was extensively damaged (TR 32).

Finally, the Court found the repossession was in total disregard of Debtor's rights (TR 36)

and caused her humiliation and embarrassment in front of her children and friends (TR

33). Given these facts, and in light of Chase's flagrant attitude of being above and

beyond the law, the Judge ruled that this was an appropriate case for sanctions (TR 33).

This Court can not say that such a finding was in error.

Having found the award of punitive damages was appropriate in this instance, the

Court turns now to the awarded sum of punitive damages. The Bankruptcy Court

21

awarded Debtor punitive damages in the amount of $25,000. Chase contends this award is excessive and therefore constitutes an abuse of discretion. This Court disagrees. As noted above, the Court is of the opinion that the imposition of punitive damages was not in error as the facts of this case constitute an "appropriate circumstance" to award punitive damages. In light of the same circumstances, the Court does not find that the Bankruptcy Judge abused his discretion in making the actual award.

The record reflects the initial imposition of actual damages and the leave to amend these damages in the event Chase did not comply with first order (R. 5). After being completely ignored by Chase, the Bankruptcy Court acted within its discretion by awarding damages in an amount reflecting a reasonable relationship to Debtor's actual damages and adequately reflecting the degree of reprehensibility involved in this case. Chase has offered a comparative analysis of other awards given for violations of the automatic stay, none of which rise to the level of egregiousness found in the case at bar. Notwithstanding the fact this award is admittedly large, the Court finds Chase's conduct to and respect for the Debtor, the Bankruptcy Court and the provisions and laws set out in the Bankruptcy Code in general was so reprehensible as to justify the large award. Accordingly, this Court AFFIRMS the award of $25,000 in punitive damages against Chase for its actions arising out to its willful violation of the automatic stay.

## **Conclusion**

Upon thorough a review of the record before the Court and the Court being of the

opinion that no clear error of fact and no error of law exists, the judgment of the

Bankruptcy Court is hereby **AFFIRMED**.


**DONE** and **ORDERED** this  _19_  day of April, 2000.


Inge P. Johnson
U.S. District Judge